NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

EMONE B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.B., *Appellees.*

No. 1 CA-JV 22-0008
FILED 8-18-2022

---

Appeal from the Superior Court in Maricopa County
No. JD532222
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

---

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Vice Chief Judge David B. Gass joined.

---

**B A I L E Y**, Judge:

¶1             Emone B. ("Mother") appeals the termination of her parental rights to her child, A.B.[1]  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY[2]**

¶2             The Department of Child Safety ("DCS") took custody of A.B. approximately two months after her birth and, in January 2019, filed a dependency petition alleging, inter alia, that Mother was unable to parent due to neglect, engaging in domestic violence with Father, and mental health issues.  DCS further alleged that Mother had multiple prior reports of substance abuse (methamphetamine) and could not meet A.B.'s basic and medical needs.  In April 2019, the court adjudicated A.B. dependent when Mother failed to attend a pretrial conference without good cause.

¶3             Over nearly three years, DCS either referred Mother or Mother self-referred for a variety of reunification services, including substance-abuse testing and treatment, mental-health treatment, a crisis support team, psychological and neuropsychological evaluations, individual and domestic-violence counseling, parenting classes, a parent aide with visitation, and transportation assistance.

¶4             For the first nine months of the dependency, Mother barely participated and continued to abuse methamphetamine almost daily. During this time, Mother sought help at a mental-health facility, but she later refused to participate with the crisis support team DCS provided.

---

[1]     The superior court also terminated the parental rights of A.B.'s father ("Father").  Father is not a party to this appeal.

[2]     We view the facts in the light most favorable to upholding the superior court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶5 Over the next six months, starting in October 2019, Mother completed a thirty-day residential treatment program, graduated from a sober-living home, completed an outpatient treatment program through TERROS, and attended twelve-step meetings. In mid-October 2019, soon after entering the residential treatment program, Mother tested positive for amphetamine. This was Mother's last positive urinalysis test for either methamphetamine or amphetamine, and she insists that is her sobriety date from methamphetamine.

¶6 In the two years leading up to the October 2021 termination adjudication, Mother drug tested more consistently, but still had periods where she did not call in and missed tests. Additionally, Mother took three hair-follicle tests that returned positive for methamphetamine. The latest of those tests was in November 2020, more than a year after her alleged sobriety date, and it showed slightly increasing methamphetamine levels. Mother also had a positive alcohol test in July 2020.

¶7 Regarding other services, Mother completed a neuropsychological evaluation in March and April 2020, and which was updated shortly before the termination adjudication. In 2020, the evaluating psychologist diagnosed her with post-traumatic stress disorder, major depressive disorder, and a stimulant-use disorder. He gave Mother a fair prognosis for being able to parent A.B., "contingent on her ability to gain better control over her trauma[-]related anxiety and mood conditions." The psychologist recommended she complete a twelve-step program, a psychiatric evaluation, and trauma therapy. Mother completed a psychiatric evaluation and began medication and trauma therapy, though she was initially resistant to discussing her substance abuse and past trauma. As of September 2021, the evaluating psychologist commended Mother for her apparent efforts regarding substance abuse but found her progress in other areas lacking. Specifically, the psychologist found Mother's lack of progress regarding her underlying trauma condition and trauma-related anxiety and depression would undermine her long-term sobriety and interfere with her ability to focus on A.B.'s needs, which would expose A.B. to an ongoing risk of harm or neglect.

¶8 Mother also visited A.B. more consistently and successfully completed the parent-aide service. But because A.B. showed high anxiety during and after visits, DCS's psychologist recommended one of her foster parents attend visits. By the termination hearing, DCS had begun phasing the foster mother out of the visitations.

**¶9**　　　Meanwhile, over Mother's objection, the court changed the case plan to severance and adoption in August 2019. DCS's motion to terminate Mother's parental rights alleged abandonment, chronic substance-abuse, and six- and fifteen-month out-of-home placement grounds. The superior court held an adjudication over five days and, in a December 2021 ruling, terminated Mother's parental rights under the chronic substance-abuse and fifteen-month out-of-home placement grounds, but found DCS did not prove the six-month out-of-home placement ground.

**¶10**　　　Mother timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 8-235(A).

## DISCUSSION

*I.　　Fifteen-Month Time-In-Care Ground*

**¶11**　　　Mother argues insufficient evidence supports the superior court's order under the fifteen-month out-of-home placement ground. To terminate a parent-child relationship, the superior court must find at least one statutory ground for severance under A.R.S. § 8-533(B) by clear and convincing evidence. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The court must also find severance is in the child's best interests by a preponderance of the evidence. *Id.* We review the court's severance determination for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (citation omitted). The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citation omitted).

**¶12**　　　The superior court may terminate parental rights under the fifteen-month out-of-home placement ground if it finds that (1) "[t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer"; (2) "the parent has been unable to remedy the circumstances" that caused the out-of-home placement; and (3) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c). "Circumstances" means "those circumstances existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children." *Jordan C. v. Ariz. Dep't of*

*Econ. Sec.*, 223 Ariz. 86, 96, ¶ 31 n.14 (App. 2009) (internal quotations and citations omitted).

¶13    Mother argues that while making findings under the fifteen-month out-of-home placement ground, the superior court failed to consider the circumstances existing at the time of the severance, which, according to her, show she had committed to sobriety and actively participated in services.

¶14    Although the superior court found that Mother had made "great progress" in overcoming her methamphetamine addiction, Mother had missed numerous drug tests after her claimed sobriety date and had not fully remedied her mental-health issues. The court found her failure to fully address her mental health by the time of trial "pose[d] a barrier to her sustained sobriety and her ability to meet [A.B.'s] needs." Reasonable evidence supports these findings.

¶15    The record shows that Mother's substance-abuse and mental-health issues were co-occurring, dependent conditions. Indeed, her evaluating psychologist opined that her sobriety was contingent on her ability to gain control over her mental health and past trauma. Mother commendably made great strides in therapy and even sought out additional forms of trauma treatment to compliment her individual therapy. Nevertheless, she was initially resistant to discussing her past trauma and substance abuse, which somewhat delayed her progress. At the time of trial, Mother had just begun to delve into her trauma.

¶16    Additionally, Mother did not consistently call in to the testing line as directed, and in the year leading up to the termination hearing, failed to test more than twenty times. The case manager testified that DCS considers missed tests as positive.

¶17    Finally, Mother tested positive for alcohol approximately nine months after her claimed sobriety date. Considering her long history of substance abuse, Mother conceded her positive alcohol test would be considered a relapse, and the case manager testified it indicates Mother could be minimizing her continued use of substances. Then, a year after her claimed sobriety date, Mother tested positive for methamphetamine through a hair-follicle test, and the test reflected a higher concentration of methamphetamine than a previous test. Although she disputed the positive hair-follicle test through expert testimony, the superior court found that Mother's "failure to call in as directed, combined with the continuous missed tests and the levels reflected in the hair follicle," belied the

alternative explanations offered by her expert. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002) ("The resolution of [] conflicts in the evidence is uniquely the province of the juvenile court as the trier of fact; we do not re-weigh the evidence on review." (citations omitted)).  As a final matter, Mother did not test consistently, from which the superior court appropriately drew a negative inference as to Mother's sobriety.  On this record, Mother has not met her burden. Reasonable evidence supports the court's findings that she had been unable to remedy the circumstances by the termination hearing and a substantial likelihood exists that she will not be capable of exercising proper and effective parental care and control in the near future.[3]

*II.      Best Interests*

**¶18**      Mother also challenges the court's finding that severance was in A.B.'s best interests.  As we have noted, in addition to finding a statutory ground for termination, the superior court must also determine what is in the best interests of the child by a preponderance of the evidence.  *Kent K.*, 210 Ariz. at 284, ¶ 22.  Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35.  The best interests determination "must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (citations omitted).  "[C]ourts must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

**¶19**      The court may find a child would benefit from termination if there is an adoption plan or if the child is adoptable, *see id.*, at 150-51, ¶¶ 13-14, or if the child "would benefit psychologically from the stability an

---

[3]      Mother also argues the court erred in finding evidence sufficient to terminate her rights based on chronic substance abuse under A.R.S. § 8-533(B)(3).  Because we affirm the court's order based on the fifteen-month time-in-care ground, we do not address the chronic substance-abuse ground. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577-78, ¶ 5 (App. 2017).

adoption would provide," *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).

¶20 Mother generally argues that DCS failed to prove that severance would give A.B. an affirmative benefit, but she does not specifically challenge the court's findings that A.B. is an adoptable child, and her foster family was meeting her needs and wished to adopt her, which would provide her with stability and permanency. These findings are supported by reasonable evidence in the record and establish how A.B. would benefit from severance.

¶21 Mother contends that DCS hampered her efforts to bond with A.B. by having the child's foster mother attend visits. The foster mother's attendance at visits began because Mother had only visited A.B. approximately four times in her first year of life, and when Mother began visiting more consistently, A.B. would scream inconsolably during and after visits. The case manager therefore consulted with DCS's psychologist, who recommended the foster mother attend visits "solely to provide a 'secure base' for [A.B.] and comfort her when needed so that she can feel safe, secure and return to play with" Mother. The psychologist also recommended that the foster mother "should be instructed to NOT compete for [A.B.'s] attention or engage in any play with" her. The record does not suggest the foster mother ever defied this recommendation. Further, the case managers consulted with the psychologist bi-annually to re-evaluate the need for the foster mother's presence and began phasing her out of the visits by the termination hearing. Under these circumstances, we cannot say DCS's actions were unreasonable.

¶22 Mother further contends her bond with A.B. was hampered by DCS's decision to offer her only half the visitation hours it usually offers parents of young children. Eleven months before the termination hearing, because of staffing issues, DCS told Mother she could either wait until a case aide had four hours available to supervise her visits or she could begin two-hour visits immediately. Mother understandably chose to immediately begin two-hour visits. DCS cites Mother's inflexible work schedule as limiting further visits, but it is DCS's duty to "make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019) (citation omitted).

¶23 Regardless, even if DCS erred, Mother has not demonstrated how her bond with A.B. would overcome the court's finding that "Mother still needs further progression in counseling and therapies to be

emotionally healthy" and available to A.B. *See Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016) ("[A] bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." (citation omitted)).

## CONCLUSION

**¶24** For the foregoing reasons, we affirm the termination of Mother's parental rights to A.B.



AMY M. WOOD • Clerk of the Court
FILED:    AA